IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| JENNIFER LYNN PLEASANT,     )<br>                             )<br>     Plaintiff,              )<br>                             )<br>  vs.                        )<br>                             )<br> CAROLYN W. COLVIN,          )<br> Commissioner of Social Security, )<br>                             )<br>     Defendant.              ) | Case No. 3:15-cv-01355-TMP |

# MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Jennifer Lynn Pleasant, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Ms. Pleasant timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Pleasant was forty years old on her alleged onset date, and she has the equivalent of a high school education.  (Tr. at 29).  Her past work experience

includes employment as a chicken processing plant worker, salad bar attendant, cook, and shift manager at a fast-food restaurant. (Tr. at 28). Ms. Pleasant claims that she became disabled on April 19, 2011, due to fibromyalgia, scoliosis in her upper back, diabetes, high blood pressure, acid reflux, anemia, high cholesterol, fluid on her left knee, chostochonritis, and bursitis in her left shoulder. (Tr. at 149).[1]

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R.

---

[1] It should be noted that the Claimant did not list depression or anxiety on her Adult Disability Report among the list of medical conditions limiting her ability to work. (Tr. at 149).

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the sequential analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ determined that Ms. Pleasant has not engaged in substantial gainful activity since the alleged onset of her disability in 2011. (Tr. at 23). According to the ALJ, Plaintiff's fibromyalgia with chronic pain syndrome, coronary artery disease status post-stent placement, hypertension, diabetes mellitus, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*) The plaintiff also suffers from non-severe impairments of mild scoliosis, gastroesophageal reflux disease ("GERD"), hyperlipidemia, anemia, depression, and anxiety. (Tr. at 24). However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25). Although the ALJ found that her medical conditions were of the type that one could reasonably expect to cause pain, he determined that Ms. Pleasant's claims regarding the intensity and limiting effects of her impairments were not fully credible. (Tr. at 28). He determined that the plaintiff had the RFC to perform

"the full range of sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. at 26).

According to the ALJ, Ms. Pleasant is unable to perform any of her past relevant work. (Tr. at 28). The plaintiff is a younger individual, has the equivalent of a high school education, and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 29). The ALJ determined that transferability of job skills is not material to the determination of the plaintiff's case. (*Id.*) The ALJ determined that there are a significant number of jobs in the national economy that the plaintiff is capable of performing and "considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.28." (Tr. at 29). The ALJ concluded his findings by stating that the plaintiff "has not been under a disability, as defined in the Social Security Act, from April 19, 2011," to January 2, 2014, the date of the ALJ's decision. (Tr. at 29-30).

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

The Claimant asserts two grounds for reversal of the ALJ's decision.  Ms. Pleasant argues that the ALJ's decision should be reversed and remanded because the ALJ erred in not determining that the plaintiff's anxiety and depression were "severe" impairments at step two of the sequential analysis.  She also argues that

the ALJ had a duty to expand the record if he had any questions regarding the plaintiff's anxiety and depression.

### A. Severe Impairments

In addition to the other medical conditions identified by her, the plaintiff claims that she suffers from anxiety and depression, which have been treated with medication in the past, and that these impairments should have been designated "severe" by the ALJ. The ALJ addressed the plaintiff's claims of anxiety and depression as follows:

> The undersigned recognizes that there is some evidence of mental health problems in the record (Exhibits 14F and 15F). It appears that the claimant has been treated for depression and anxiety by her primary care provider with Valium and Ambien. The claimant is prescribed Cymbalta for fibromyaligia symptoms as opposed to mental health symptoms. There is no evidence of psychiatric hospitalization. In July 2013, the claimant contacted Lakeview Center complaining of symptoms of depression and anxiety. On August 1, 2013, she had an assessment screening by Donna Englehart, MS, LMHC (Licensed Mental Health Counselor), who is not an acceptable medical source under our regulations. Based entirely upon the claimant's subject [sic] account of her symptoms during an interview and mental status examination, Ms. Englehart assessed the claimant with bipolar disorder, most recent episode depressed, severe, with psychotic features. She found a Global Assessment of Functioning of 48, meaning moderately severe symptoms and impairments. The claimant was encourage [sic] to have counseling, but declined to do so.
>
> Ms. Englehart's findings are not consistent with or supported by the record as a whole, which includes no other evidence of mental health treatment other than routine and conservative treatment by the

8

claimant's primary care provider and no diagnosis of bipolar disorder by an acceptable medical source. The claimant submitted an October 13, 2012 Function Report, which indicated no limitations related to mental health symptoms (Exhibit 4E). Giving the claimant the benefit of doubt, the undersigned has considered depression and anxiety as non-severe impairments. These impairments have not caused more than minimal limitation in the claimant's ability to perform basic mental work activities. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. The first functional area is activities of daily living. In this area, the claimant has no limitation. The next functional area is social functioning. In this area, the claimant has no limitation. The third functional area is concentration, persistence, or pace. In this area, the claimant has no limitation. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are non-severe (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)). The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. at 24-25).

The treatment of the plaintiff for depression and anxiety is addressed intermittently throughout her medical records. However, when applying for DIB and SSI, the plaintiff did not allege that anxiety or depression impaired her ability to work. (Tr. at 62). The disability report, which specifically directed the plaintiff to "[l]ist all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work," failed to list any mental impairments. (Tr. at 148-49). When the plaintiff completed her list of medications, she stated that she was prescribed Valium "to help sleep," and that she was prescribed Cymbalta to treat her fibromyalgia, not for the treatment or depression or anxiety. (Tr. at 152). When the plaintiff completed the disability report for her appeal, she listed "problems with my sciatica causing numbness in left leg" as the only change in her illnesses or conditions. (Tr. at 168). The plaintiff did not include Valium on her appeals medication list, and again stated that she was on Cymbalta as treatment for fibromyalgia. (Tr. at 170).

The plaintiff's medical records from Shoals Hospital on October 31, 2010, note her past medical history as diabetes, hypertension, previous Caesarian Section, cholecystectomy, and ventral hernia repair. (Tr. at 223). The medications

reported do not include anxiety or depression medications. (*Id.*) Later, records from Rheumatology Associates of North Alabama, P.C. note that she had been diagnosed with fibromyalgia and that she was prescribed Cymbalta for treatment of fibromyalgia. (Tr. at 259). The plaintiff's Baptist Hospital triage sheet from September 26, 2011, does not note anxiety or depression on her medical history, and her records from Baptist Hospital on October 10, 2011,[2] listed depression, but not anxiety as part of the plaintiff's medical history. (Tr. at 275, 279, 280).

    Medical records from Escambia Community Clinics dated September 12, 2011, state that the plaintiff was prescribed Cymbalta, but not Valium. (Tr. at 315). Records from The Cardiovascular Institute of the Shoals dated May 31, 2011, indicate that the plaintiff was negative for anxiety, depression, memory change, and bipolar disorder. (Tr. at 324-25). Her medications included Cymbalta, but not Valium. (Tr. at 325). The plaintiff's emergency room records from North Baldwin Hospital dated February 23, 2012, indicate that the plaintiff had a normal mood and affect and that she was negative for anxiety and depression. (Tr. at 343). The notations regarding depression, anxiety, and mood were the same in the plaintiff's North Baldwin Records from December 12, 2011; July 7, 2012; August 31, 2012; October 15, 2012; November 7, 2012; and December 8, 2012. (Tr. at 340, 345, 356,

---

[2] The date is only partially legible.

386, 398, 442). Finally, the plaintiff's North Baldwin Hospital emergency room records from December 17, 2012, appear to indicate a history of anxiety, but also note that the plaintiff's mood and affect were normal at the time of treatment. (Tr. at 428-29).

The plaintiff's discharge summary from Thomas Hospital on August 1, 2011, makes no mention of depression or anxiety. (Tr. at 475-77). Her "active medication list" from the same date does not list Cymbalta, Valium, or similar medications. (Tr. at 503). The plaintiff's December 20, 2012, medical records from Thomas Hospital indicate that the plaintiff was not currently, nor had she ever been, treated for an emotional or behavioral disorder. (Tr. at 617). The records noted that the plaintiff did not have a complaint or diagnosis relating to emotional or behavioral disorders, had not ever had thoughts of harming herself, and did not currently have thoughts of harming herself. (Tr. at 618). Her medications list from that date includes Cymbalta, but not Valium or other depression or anxiety medications. (Tr. at 624-26).

The plaintiff's records from Franklin Primary Health Center dated December 31, 2012, state that the plaintiff suffers from chronic depression. (Tr. at 629, 631). Later, however, the records state that the plaintiff is positive for anxiety but negative for depression. (Tr. at 630). The plaintiff was admitted to West

Florida Healthcare on April 27, 2013. (Tr. at 719). Her medical history included anxiety with depression. (Tr. at 720). The plaintiff's April 29, 2013, discharge report does not list depression or anxiety as a diagnosis, but does list Zoloft as one of the plaintiff's medications. (Tr. at 648-49). The plaintiff's June 20, 2013, records from Escambia Community Clinics note that the plaintiff suffers with anxiety and has been taking Valium to treat it. (Tr. at 655).

The plaintiff was assessed by Donna Englehart, MS, LMHC, at Lakeview Center Baptist Health Care on July 17, 2013. (Tr. at 668). The plaintiff arrived at the office complaining of depression, anxiety, and agitation. (*Id.*) The records further state that she was suffering from mood and psychotic disorders, and her key symptoms were anhedonia, hopelessness, anxiety, and panic, and that the plaintiff had a history of suicide attempts.[3] (Tr. at 669). The plaintiff was not experiencing current suicidal ideation, and her risk level was determined to be low. (Tr. at 670). Englehart diagnosed the plaintiff with bipolar disorder along with severe depression with psychotic feature and anxiety disorder.

Although the plaintiff, relying heavily on Englehart's diagnosis, contends that the plaintiff's anxiety and depression causes "more than a minimal limitation of the claimant's ability to perform basic mental work activities" (doc. 6), the

---

[3] It was clarified that the plaintiff "tried overdosing as a teenager but no hospitalizations are reported." (Tr. at 672).

argument is not consistent with the record as a whole. The plaintiff did not allege that her anxiety or depression are reasons that she is unable to work, and, she did not testify to such at the ALJ's hearing. Except for the evaluation by Englehart, the plaintiff's medical records do not indicate that the plaintiff complained to her doctors that her anxiety or depression were unmanageable or had a significant impact on her ability to perform work or life activities.

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 2004) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own

record). Any medical source's opinion can be rejected where the evidence supports a contrary conclusion. *See, e.g., McCloud v. Barnhart*, 166 Fed. App'x 410, 418-19 (11th Cir. 2008). The ALJ clearly addressed his reasoning for not giving greater weight to Englehart's opinion. The court is of the opinion that the ALJ had good cause to disregard Englehart's assessment of the plaintiff, and to find that the plaintiff's depression and anxiety were non-severe impairments. *See Phillips*, 357 F.3d at 1240-41.[4]

### B. Duty to Expand the Record

The plaintiff argues that, "[a]t the very least, the ALJ had a duty to fully develop the record, which in this case would include ordering a psychological consultative examination." (Doc. 10, p. 8). The ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision. *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007). The Eleventh Circuit has determined that a consultative examination must be ordered if one is needed to make an informed decision regarding the claimant's disability. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984), citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B). An

---

[4] To the extent that the plaintiff argues that the ALJ erred at step two of the sequential analysis, it is clear that he found that she suffered from severe impairments (if not including anxiety and depression) and the analysis proceeded to the next step. The finding of a severe impairment, allowing the sequential analysis to proceed to step three, moots any concern about the assessment of the severity or non-severity of impairments at that stage of the analysis.

ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. § 404.1519a(b)(4).

However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination or to expand the record. *Good v. Astrue*, 240 Fed. Appx. 399, 403-404 (11th Cir. 2007). In the instant case, the ALJ had available to him years of the plaintiff's medical records as well as disability reports completed by the plaintiff and the plaintiff's own testimony. The record was sufficiently developed to allow the ALJ to determine which of the plaintiff's impairments are severe without seeking an additional consultative examination or further information from Englehart.

### IV. Conclusion

The ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. Upon review of the administrative record, and considering all of Ms. Pleasant's arguments, the

Commissioner's decision is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DONE this 15th day of August, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE